IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CREEKVIEW IP LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civ. No. 22-426-CFC |
| ) | |
| JABRA CORPORATION, ) | |
| ) | |
| Defendant. ) | |
| CREEKVIEW IP LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civ. No. 22-427-CFC |
| ) | |
| SKULLCANDY INC., ) | |
| ) | |
| Defendant. ) | |

**MOTION TO DISMISS CONTEMPT PROCEEDING**

Former Plaintiff Creekview IP LLC and non-party Jacob LaPray hereby move the Court to dismiss the contempt proceeding scheduled for August 1, 2023. In support thereof, movants state as follows:

**I.    AS THE UNDERLYING ACTION HAS TERMINATED, THE COURT LACKS AUTHORITY TO PURSUE THIS CONTEMPT PROCEEDING.**

The purpose of civil contempt is remedial and meant to benefit the complainant. *See Hicks v. Feiock*, 485 U.S. 624, 631 (1988); *Spindelfabrik Suessen-Schurr v. Schubert & Salzer Maschinenfabrik Aktiengesellschaft*, 903 F.2d 1568,

1578 (Fed. Cir. 1990). Criminal contempt, by contrast, is punitive, to vindicate the authority of the Court. *Id.* Civil contempt proceedings are thus typically instituted on the motion of the plaintiff, not the court. *Roe v. Operation Rescue*, 919 F.2d 857, 868 (3d Cir. 1990).

Civil contempt sanctions are designed either to compensate the injured party or to coerce the defendant into complying with the court's order. *See Operation Rescue*, 919 F.2d at 868; *Spindelfabrik*, 903 F.2d at 1578. "Even when the sanctions coerce, they are designed to aid the complainant through ensuring that the contemnor adheres to the court's order." *Operation Rescue*, 919 F.2d at 868; *Latrobe Steel Co. v. United Steelworkers of America*, 545 F.2d 1336, 1344 (3d Cir.1976).

Because the purpose of coercive civil sanctions is to benefit the complainant, coercive civil contempt proceedings must be vacated where the underlying proceeding has been rendered moot. *See Shell Offshore Inc. v. Greenpeace, Inc.*, 815 F.3d 623, 631 (9th Cir. 2016). *See also Shillitani v. United States*, 384 U.S. 364, 370 (1966); *ePlus, Inc. v. Lawson Software, Inc.*, 789 F.3d 1349, 1356 (Fed. Cir. 2015) (stating other circuits have similarly held that civil contempt sanctions must be set aside if the underlying injunction has been reversed on appeal or the basic action has become moot); *Ohr ex rel. NLRB v. Latino Express*, Inc., 776 F.3d 469, 479–80 (7th Cir. 2015); *FTC v. Verity Int'l, Ltd.*, 443 F.3d 48, 70 (2nd Cir. 2006); *Consol. Rail*

*Corp. v. Yashinsky*, 170 F.3d 591, 596 (6th Cir.1999); *Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961–62 (5th Cir.1995); *Klett v. Pim*, 965 F.2d 587, 590 (8th Cir.1992).

"A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000). Thus, to avoid due process violations, coercive civil contempt proceedings must be vacated where there are no live issues between the parties because the civil contempt proceedings could evolve into criminal contempt proceedings. *Shell Offshore, Inc.*, 815 F.3d at 629, 631 ("[C]ivil coercive contempt may eventually evolve into criminal contempt," "Thus, in cases where the underlying proceeding has been rendered moot, the coercive contempt proceeding must be vacated in order to avoid a due-process violation").

Here, the contempt proceedings are improper because the underlying proceedings are moot[1] and failure to vacate the proceedings would violate Creekview's and Mr. LaPray's due process rights. The Court cannot impose coercive civil sanctions because the underlying proceeding is moot. First, the Court's contempt proceedings lack the "character and purpose" of civil contempt proceedings. The Defendants did not complain of noncompliance and motion for contempt sanctions. Rather, the Court, *sua sponte*, initiated an investigation into

---

[1] This fact distinguishes these cases from *Nimitz* cases, Civ. No. 21-1247-CFC, Civ. No. 21-1362-CFC, Civ. No. 21-1855-CFC, Civ. No. 22-413-CFC, which remain active.

3

fraud or other wrongdoings and ordered Creekview and Mr. LaPray to show cause as to why they should not be held in contempt for their failures to participate in the Court's investigation. Similarly, any sanction imposed by the Court would not serve to aid the Defendants in ongoing litigation, but rather would force Creekview and Mr. LaPray to cooperate in the Court's investigation.

Nonetheless, assuming *arguendo* the Court's proceedings are civil in nature, there are no "live" issues between the parties. Creekview and Defendant Skullcandy, Inc. filed a joint stipulation to dismiss all claims and counterclaims in the case without prejudice on September 28, 2022 and Creekview voluntarily dismissed its complaint against Jabra, after the parties executed a settlement agreement. Thus, the underlying proceedings are moot and no coercive civil sanctions can be imposed. In such case, the Court lacks jurisdiction to find the parties in contempt of court.

## II. THE ORDERS REQUIRING DEFENDANTS AND THE LAPRAYS ARE TRANSPARENTLY INVALID.

Court orders that are transparently invalid or exceed the Court's jurisdiction need not be obeyed and can be challenged in a contempt proceeding. *See Walker v. Birmingham*, 388 U.S. 307, 315-21 (1967) (suggesting that a contemner might be allowed to challenge contempt citation on ground that underlying court order was "transparently invalid"). *See also U.S. Catholic Conference v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72, 78 (1988) ("civil contempt order may depend upon jurisdiction of the court").

On July 12, 2023, Plaintiff filed a Notice of Objection to And Non-Participation in Judicial Inquisition in each of the above-captioned cases, which Plaintiff incorporates herein by reference, demonstrating that the Court's judicial inquisition is invalid.  Plaintiff pointed out that the Court's inquisition was clearly invalid because, shown in actions of the Court in the *Backertop*[2]:

* "Courts cannot conduct factual investigations." *Kisor v. Wilkie*, 139 S.Ct. 2400, 2413 (U.S. 2019);

* The Court acted as both investigator and judge, *see* ABA Model Code of Judicial Conduct R. 2.9(C) ("A judge shall not investigate facts in a matter independently, and shall consider only the evidence presented and any facts that may properly be judicially noticed")[3], rather than appoint *amicus curiae* to act as prosecutor;

---

[2]   Some of these actions, although having occurred in the Backertop cases, have not yet occurred in the above-captioned actions, but serve as a preview of what may come.

[3]   Although the ABA Model Code is not binding on this Court, "it provides persuasive authority for purposes of disciplining jurists for ethical misconduct." Melinda A. Marbes, "Reforming Recusal Rules: Reassessing the Presumption Of Judicial Impartiality In Light Of The Realities Of Judging And Changing The Substance Of Disqualification Standards To Eliminate Cognitive Errors," 7 *St. Mary's Journal on Legal Malpractice & Ethics* 238, 289 (2017).

* The Court undertook its inquiry based on disclosures required by standing orders, notwithstanding that the requirements of those standing orders had been met;

* Here, the Court issued orders requiring non-party Jacob LaPray to appear and testify, even though (i) court orders are not binding upon non-parties, *McKinley v. Grisham*, 2021 WL 4290178 at *6 (D. N.M. Sep. 21, 2021); *Cerebral Palsy Association of Nassau County, Inc. v. Cochran*, 2021 WL 1037865 at *6 (D. D.C. Feb. 10, 2021), and (ii) in light of Fed. R. Civ. P. 45, the Court lacks inherent authority to order her presence as she lives greater than 100 miles from the courthouse, *Dietz v. Bouldin*, 579 U.S. 40, 45 (2016) ("the exercise of an inherent power cannot be contrary to any express grant of or limitation on the district court's power contained in a rule or statute");

* The Court raised the possibility of fraud on the court, a criminal offense, without first advising either Creekview or Mr. LaPray of their rights as regards to criminal proceedings;

* The Court exceeded the scope of noticed hearings beyond the topics set forth in the notices, with no opportunity for counsel to prepare to address the new topics;

* The Court continued its investigation after Notices of Dismissal and Stipulations of Dismissal With Prejudice were filed;

* \* The Court conducted the hearing in a manner of a prosecuting attorney examining an adverse witness at trial, as well as a judge, asking leading questions at times, while at the same time preventing Backertop's attorney from approaching the bench, and overruling an objection from Backertop's counsel; and

* \* The Court read aloud in open court documents Backertop had classified as subject to the attorney-client privilege, commenting that it did not think the documents were subject to the privilege, without giving Backertop an opportunity to brief the issue and without giving any reasons for its comment, and without giving Backertop.

The proceeding was also invalid because neither the parties nor the LaPrays were advised of potential criminal liability at some point. This Court has stated that it is investigating whether there has been a violation of the Court's Standing Order Regarding Disclosure Statements Required by Federal Rule of Civil Procedure 7.1 and Standing Order Regarding Third Party Litigation Funding Arrangements. In the Production Order, the Court in these cases raised fraud on the court in the order requiring Mr. LaPray to appear. Backertop and Ms. LaPray strenuously deny that there was any fraud on the Court. But they respectfully point out to the Court that fraud on the Court can form the basis of a sanction of criminal contempt. *E.g., United States v. Williams*, 622 F.2d 830, 838 (5th Cir.1980) (noting that "[t]he defendants in Pendergast perpetrated a fraud on the court, punishable as criminal contempt");

*Cobell v. Norton*, 334 F.3d 1128, (D.C. Cir. 2003) ("We have been unable to find any authority for, let alone any reason to believe, the proposition that fraud on the court constitutes a civil contempt. We therefore treat the district court's contempt citations on specifications two through five as criminal in nature").

"Criminal contempt is a crime in the ordinary sense, and criminal penalties may not be imposed on someone who has not been afforded the protections that the Constitution requires of such criminal proceedings." *Mine Workers v. Bagwell*, 512 U.S. 821, 825 (1994) (citations and internal quotation marks omitted). *See also Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 444 (1911) (finding that a criminal contempt defendant has a guarantee against self-incrimination, presumption of innocence, and proof beyond a reasonable doubt); *Cooke v. United States*, 267 U.S. 517, 537 (1925) (notice of charges, assistance of counsel, and right to present a defense); *In re Oliver*, 333 U.S. 257, 278 (1948) (public trial); *United States v. Dixon*, 509 U.S. 688, 696 (1993) (double jeopardy).

This Court has been compelling Backertop and Ms. LaPray to provide testimonial and documentary evidence without advising them of their rights in the face of a possible criminal prosecution. *See, e.g., Dartez v. Peters*, 759 Fed. Appx. 684, 693 (10th Cir. 2018).

8

Although the Court has not said that, if it finds fraud on the Court (an unlikely scenario), it will refer the matter for criminal prosecution, but neither has it said that it would not at any time do so.

The effect of these acts, some individually and all collectively, exceeded the Court's jurisdiction, and so are transparently invalid and in excess of the Court's jurisdiction.

### III. THE ORDER REQUIRING MR. LAPRAY TO APPEAR IS TRANSPARENTLY INVALID AS THE COURT LACKS INHERENT AUTHORITY TO REQUIRE THE APPEARANCE OF MR. LAPRAY, WHO LIVES MORE THAN 100 MILES AWAY.

The Court ordered Mr. LaPray, a non-party, to travel to Delaware for an in-person hearing. Court Orders are not binding on non-parties. *McKinley*, WL Op. at *6; *Cerebral Palsy Association of Nassau County, Inc.*, WL Op. at *6. As such, Mr. LaPray cannot be found to be in contempt of an Order not applicable to her.

Apart from this, the Order is transparently invalid, because the Court does not have inherent authority to issue such an Order. Federal courts may not invoke inherent authority to avoid the requirements of the Federal Rules of Procedure. *Bank of Nova Scotia v. U.S.*, 487 U.S. 250, 255 (1988) ("Rule 52 is, in every pertinent respect, as binding as any statute duly enacted by Congress, and federal courts have no more discretion to disregard the Rule's mandate than they do to disregard constitutional or statutory provisions"); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 52 (1991) (describing the holding in *Bank of Nova Scotia* as "a district court could not

9

rely on its supervisory power as a means of circumventing the clear mandate of a procedural rule"); *Dietz v. Bouldin*, 579 U.S. 40, 45 (2016) ("[T]he exercise of an inherent power cannot be contrary to any express grant of or limitation on the district court's power contained in a rule or statute").[4]

In *Racher v. Lusk*, 2016 WL 67799 (W.D. Okla. Jan. 5, 2016), the Court declined to exercise its inherent authority to compel a non-party to travel more than 100 miles to attend a hearing considering Fed. R. Civ. P. 45(c)(1).

These authorities confirm that the Order mandating that Mr. LaPray to travel to Delaware to be present before this Court is patently and transparently invalid.

## IV.  A DIFFERENT JUDGE MUST BE SEATED TO ADDRESS CONTEMPT AS THE PRESENT JUDGE CANNOT SERVE AS BOTH INVESTIGATOR AND JUDGE.

There is a presumption of bias when a judicial decision maker has the dual role of investigating and adjudicating disputes and complaints. *See In re Murchison*, 349 U.S. 133, 139 (1955) (holding that it was a violation of due process for one adjudicator to preside as the grand jury and judge for the same defendants). *See also Wesbrook v. Thaler,* 585 F.3d 245, 256 (5th Cir. 2009) ("Due process is violated when a judge has a dual role of both investigating and adjudicating a matter").[5]

---

[4]  "Supervisory power" is another way of saying "inherent power." *See Dietz,* 579 U.S. at 47.

[5]  In *Withrow v. Larkin*, 421 U.S. 35, 47 (1975), in the context of the commingling of adjucatory and investigative functions by an administrative agency,

The present action is a textbook example of intermingling of investigative and adjudicatory functions. This Court ordered Backertop to produce documents and Mr. LaPray. It ordered Mr. LaPray directly to appear. In the Backertop cases, the Court asked Ms. LaPray leading questions. When the Court finished its inquiry, it instructed Ms. LaPray to leave the witness box without offering counsel the opportunity to ask questions. Counsel for Backertop was reduced to the role of a bystander. No one could see this and consider it to be a fair hearing.

If the hearing is to go forward, it must be with another judge.

## **CONCLUSION**

WHEREFORE, for the foregoing reasons, former plaintiff Creekview IP LLC and non-party Jacob LaPray respectfully requests that this Court dismiss this contempt proceeding.

---

*id.* at 46-47, the Supreme Court rejected the "bald proposition" that the "combination of investigative and adjudicative functions ..., without more, constitute[s] a due process violation." *Id*. at 52, 54, 58. *Withrow* has been interpreted as applying only to administrative agencies. *E.g., Main Road v. Aytch,* 565 F.2d 54, 58 (3rd Cir. 1977) ("What is unacceptable in a judicial setting may be tolerable in an administrative proceeding. For example, a separation of the prosecutorial and judicial functions is required in a court case but not in an administrative proceeding") (citing *Withrow*).

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | /s/ David L. Finger<br>David L. Finger (DE Bar ID #2556)<br>Finger & Slanina, LLC<br>One Commerce Center<br>1201 N. Orange St., 7th floor<br>Wilmington, DE  19801-1186<br>(302) 573-2525<br>dfinger@delawgroup.com<br>Attorney for Plaintiff Creekview IP |
| Dated:  July 28, 2023 | LLC and non-party Jacob LaPray |

12